UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN STEVEN LAWSON, SR.,

Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

Defendant.

Case No.  15-CV-00844-HSG

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Re. Dkt. Nos. 16 & 21

Plaintiff John Steven Lawson, Sr. ("Plaintiff") seeks judicial review of the final decision of Defendant Carolyn Colvin ("Defendant"), in her official capacity as Acting Commissioner of the Social Security Administration ("SSA"), denying his application for supplemental security income disability benefits under Title XVI of the Social Security Act.  Dkt. No. 1 ("Compl.").  Plaintiff and Defendant have filed cross-motions for summary judgment to resolve the appeal.  Dkt. Nos. 16 ("Def.'s MSJ") & 21 ("Pl.'s MSJ").  No responses or replies were filed by either party.

Under Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-6, the Court finds that this matter is suitable for disposition without oral argument.  For the reasons set forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's cross-motion.

## I.      BACKGROUND

### A.      Legal Framework of the Social Security Act

42 U.S.C. § 1381a governs supplemental security income disability benefits paid out under Title XVI of the Social Security Act.  The statute provides: "[e]very . . . disabled individual who is determined . . . to be eligible on the basis of his income and resources shall . . . be paid benefits by the Commissioner of Social Security."  "[A]n individual shall be considered to be disabled . . . if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can

United States District Court
Northern District of California

be expected to last for a continuous period of not less than twelve months." *Id.* § 1382c(a)(3)(A);

*see also* 20 C.F.R. § 416.905 (setting forth relevant regulations governing definition of disability).

An individual is unable to engage in substantial gainful activity and is therefore under a disability:

> only if his physical or mental impairment or impairments are of such
> severity that he is not only unable to do his previous work but cannot,
> considering his age, education, and work experience, engage in any other
> kind of substantial gainful work which exists in the national economy,
> regardless of whether such work exists in the immediate area in which he
> lives, or whether a specific job vacancy exists for him, or whether he
> would be hired if he applied for work.

*Id.* § 1382c(a)(3)(B).  20 C.F.R. § 416.920 "explains the five-step sequential evaluation process"

that the SSA uses to decide whether a claimant is disabled.

At Step One, the ALJ must determine whether the claimant is presently engaged in work

activity that is both substantial and gainful.  *Id*. § 416.920(a)(4)(i), (b).  "Substantial work activity

is work activity that involves doing significant physical or mental activities," "even if it is done on

a part-time basis" or requires "do[ing] less, get[ting] paid less, or hav[ing] less responsibility than

when [the claimant] worked before." *Id.* § 416.972(a).  And "[g]ainful work activity is work

activity that [one] do[es] for pay or profit," "whether or not a profit is realized." *Id.* § 416.972(b).

Generally, if a claimant is working for "substantial earnings," as set forth by regulation, then she is

presently engaged in substantial gainful activity.  *Id.* §§ 416.974, 419.974a, 419.975.  "[T]aking

care of [one]self, household tasks, hobbies, therapy, school attendance, club activities, or social

programs" are generally not considered substantial gainful activity." *Id.* § 416.972(c).  If a

claimant is engaged in substantial gainful activity, she is not disabled, regardless of any medical

condition or the claimant's age, education, or work experience.  *Id.* § 416.920(a)(4)(i), (b).

At Step Two, the ALJ must determine whether the claimant's alleged impairment(s) are

medically severe.  *Id.* § 416.920(a)(4)(ii), (c).  If a claimant "do[es] not have any impairment or

combination of impairments which significantly limits [the claimant's] physical or mental ability

to do basic work activities," then the impairment(s) are not severe.  *Id.* § 416.920(c), 416.921(a).

"Basic work activities" means "the abilities and aptitudes necessary to do most jobs," including

physical functioning, sense capacity, following instructions, use of judgment, and responding to

2

and dealing with changes in usual work situations. *Id.* § 416.921(b). To evaluate alleged mental impairments in adults, the ALJ considers the claimant's persistent symptoms, signs, and laboratory findings to determine whether she has a medically determinable mental impairment. *Id.* § 416.920a(b)(1). If the ALJ finds that the claimant has a medically determinable impairment, she then rates the degree of resulting functional limitation. *Id.* § 416.920a. To do so, the ALJ measures four functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Id.* § 416.920a(c). Based on those measurements, the ALJ then determines whether the alleged mental impairment is severe. *Id.* § 416.920(d). Additionally, "[u]nless [the claimant's] impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months." *Id.* §§ 419.909, 416.920(a)(4)(ii). If the claimant does not meet these requirements, then she is not disabled, regardless of any medical condition or the claimant's age, education, or work experience. *Id.* § 416.920(a)(4)(ii).

At Step Three, the ALJ must determine whether the claimant's impairment, or combination of impairments, medically "meets or equals" an impairment listed in Appendix 1 of 20 C.F.R. § 404. *Id.* § 416.920(a)(4)(iii), (d); *see also id.* §§ 416.925 (explaining Appendix 1 and how it is used). A claimant's impairment is medically equivalent to a listed impairment if it is "at least equal in severity and duration to the criteria of any listed impairment." *Id.* § 416.926(a). If the claimant's impairment meets or exceeds the requirements of a listed impairment, the claimant is disabled, regardless of age, education, and work experience. *Id.* § 416.920(a)(4)(iii), (d).

If a claimant's impairment does not meet or equal a listed impairment, the ALJ must assess and determine the claimant's residual functioning capacity ("RFC") before proceeding to Step Four. *Id.* § 416.920(e). A claimant's RFC sets forth the most that a claimant can do despite her limitations. *Id.* § 416.945(a)(1). This determination is based on all relevant medical evidence and other evidence in the claimant's case record, including the claimant's impairment(s), even if some of them are not severe, and any related symptoms, such as pain, that affect what the claimant can do in a work setting. *Id.* §§ 416.920(e), 416.945. The ALJ will consider the claimant's ability to meet the physical, mental, sensory, and other requirements of work. *Id.* § 416.920(a)(4), (b)-(d).

United States District Court
Northern District of California

1    With respect to a claimant's physical abilities, "[a] limited ability to perform certain physical

2    demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or

3    other physical functions (including manipulative or postural functions, such as reaching, handling,

4    stooping or crouching), may reduce [a claimant's] ability to do past work and other work." *Id.* §

5    416.920(b).  With respect to a claimant's mental abilities, "[a] limited ability to carry out certain

6    mental activities, such as limitations in understanding, remembering, and carrying out instructions,

7    and in responding appropriately to supervision, coworkers, and work pressures in a work setting,

8    may reduce your ability to do past work and other work." *Id.* § 416.920(c).  Additionally, "[s]ome

9    medically determinable impairment(s), such as skin impairment(s), epilepsy, impairment(s) of

10   vision, hearing or other senses, and impairment(s) which impose environmental restrictions, may

11   cause limitations and restrictions which affect other work-related abilities." *Id.* § 416.920(d).

12       Once the ALJ determines a claimant's RFC, she proceeds to Step Four.  There, the ALJ

13   determines whether the claimant can still do her past relevant work in light of the claimant's RFC.

14   *Id.* § 416.920(a)(4)(iv), (f).  If the claimant can do so, then she is not disabled.  *Id.*  "Past relevant

15   work" is work that the claimant has done in the past 15 years that qualifies as substantial gainful

16   activity and that "lasted long enough for [the claimant] to learn to do it." *Id.* § 416.960(b)(1).  To

17   determine whether a claimant can still do her past relevant work, the ALJ may consider testimony

18   about claimant's work history, the expert opinion of a vocational expert ("VE") in response to a

19   hypothetical question about a person with the claimant's limitations, and other resources, such as

20   the Department of Labor's Dictionary of Occupational Titles ("DOT"). *Id.* § 416.960 (b)(2).  If a

21   claimant is not found disabled after Step Four, she has made out a prima facie case of disability

22   and the burden shifts to the Commissioner of the SSA ("Commissioner") to prove that the

23   claimant is not disabled under Step Five. *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002).

24       At Step Five, the ALJ must determine whether the claimant can adjust to do other work

25   that exists in significant numbers in the national economy. *Id.* § 416.920(a)(4)(v), (g).  If the

26   Commissioner proves that a claimant can do so, the claimant is not disabled. *Id.*  The ALJ will

27   consider the claimant's RFC, along with her age, education, and work experience and whether she

28   can do a job that exists in significant numbers "either in the region where she lives or in several

4

1   regions in the country." *Id.* § 416.960(c)(1).  If the ALJ determines that the claimant is not

2   disabled at Step Five, she must provide evidence in support of that finding.  *Id.* § 416.920(c)(2).

3        **B.**    **Procedural History**

4            1.   <u>First ALJ Hearing and Decision</u>

5        On December 21, 2009, Plaintiff applied under Title XVI of the SSA for the SSI disability

6   benefits at issue in this appeal, alleging that he became disabled on December 19, 2006.  Dkt. No.

7   12 ("AT") at 267-74.  After the SSA summarily denied Plaintiff's application upon initial review

8   and again upon reconsideration, Plaintiff requested a hearing before an ALJ.  *Id.* at 155-59, 163-

9   67, 170.  On January 24, 2012, the ALJ held a hearing, at which Plaintiff and a VE testified.  *Id.* at

10  41-71, 130-50.  Plaintiff appeared on his own behalf.  *Id.* at 43.  On February 15, 2012, the ALJ

11  issued a written decision finding Plaintiff was not disabled within the meaning of the SSA and,

12  accordingly, denying his SSI application.  *Id.* at 133-44.  In reaching that finding, the ALJ

13  followed the five-step sequential process required by the SSA and regulations.  *See id.*

14       Under Step One, the ALJ found that Plaintiff was not presently engaged in substantial

15  gainful activity and had not engaged in such activity since December 21, 2009.  *Id.* at 135.

16       Under Step Two, the ALJ determined that Plaintiff had severe physical impairments,

17  including "right shoulder impairment status (post-surgery), obesity, degenerative disc disease of

18  the cervical spine, mild right cubital tunnel syndrome, and low back pain of myofascial etiology,"

19  that limited his ability to perform basic work activities.  *Id.* at 135.  But the ALJ also found that

20  Plaintiff's alleged mental impairments of psychotic disorder and polysubstance use disorder, in

21  apparent remission, while medically determinable, did not cause more than "minimal limitation"

22  in his ability to perform basic mental work activities either singly or in combination.  *Id.* at 136.

23  In reaching that conclusion, the ALJ considered Plaintiff's daily living abilities, social functioning,

24  concentration, and episodes of decompensation.  *Id.*  With respect to daily living abilities, the ALJ

25  found that Plaintiff had no limitation.  *Id.*  The ALJ cited Plaintiff's testimony that he could do

26  laundry, prepare simple meals, go shopping, manage his hygiene, drive occasionally, and care for

27  and play with his children.  *Id.*  Plaintiff's doctor indicated in August 2007 that he had no

28  problems with daily activities.  *Id.*  With respect to social functioning, the ALJ also found that

United States District Court
Northern District of California

5

1  Plaintiff had no limitation.  *Id.*  Plaintiff told an examining source that he was "pretty good" in

2  social situations and could go shopping in stores.  *Id.*  He also told his doctor in August 2007 that

3  he had no problems with social functioning.  *Id.*  With respect to concentration, the ALJ found that

4  Plaintiff had a mild limitation.  *Id.*  While Plaintiff was able to obtain a driver's license and his

5  doctor indicated in August 2007 that he had no problems with task completion or adaption to work

6  or work-like situations, his narcotic medications and pain affected his concentration and pace.  *Id.*

7  Finally, with respect to decompensation (the failure to generate effective psychological coping

8  mechanisms in response to stress), the ALJ found that Plaintiff had not had any episodes of

9  extended duration, but did not cite any evidence.  *Id.*  Taking these findings together, the ALJ

10  applied the standard in 20 C.F.R. § 416.920a(d)(1)[1] and found no severe mental limitation.  *Id.*

11      At Step Three, the ALJ determined that Plaintiff's impairments or combinations thereof

12  did not meet or equal a listed impairment.  *Id.* at 137.  The ALJ noted that while obesity is not a

13  listed impairment, she considered the "combined effects of the claimant's obesity" on his "ability

14  to perform routine and necessary physical activity within the work environment."  *Id.*  The ALJ

15  then found that there was insufficient evidence to find that Plaintiff's combined impairments met

16  or equaled the severity of a listed major dysfunction of a joint or a disorder of the spine.  *Id.*  She

17  did not list any specific evidence in making that determination.  *See id.*

18      Before proceeding to Step Four, the ALJ found that Plaintiff has an RFC that allows him to

19  perform "light work as defined in 20 C.F.R. § 416.967(b) except that he should not engage in

20  work requiring overhead reaching, or climbing of ladders, ropes, and scaffolding" nor should he

21  "work at height or with hazardous machinery."  *Id.*[2]  The ALJ also found that Plaintiff "requires

22  _____

23  [1] 20 C.F.R. § 416.920a(d)(1) provides that: "If we rate the degree of your limitation in the first
   three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude

24  that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more
   than a minimal limitation in your ability to do basic work activities."

25  [2] 20 C.F.R. § 416.967(b) provides that: "Light work involves lifting no more than 20 pounds at a
   time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the

26  weight lifted may be very little, a job is in this category when it requires a good deal of walking or
   standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg

27  controls.  To be considered capable of performing a full or wide range of light work, you must
   have the ability to do substantially all of these activities.  If someone can do light work, we

28  determine that he or she can also do sedentary work, unless there are additional limiting factors
   such as loss of fine dexterity or inability to sit for long periods of time."

United States District Court
Northern District of California

United States District Court
Northern District of California

1   the option to sit and stand as necessary," but that he "retains the abilities to engage in at least

2   simple, routine, one to two-step unskilled tasks." *Id.* In determining Plaintiff's RFC, the ALJ

3   considered Plaintiff's testimony, his medical records (including objective imaging studies like

4   MRIs and x-rays), the opinions of twelve examining medical providers (Drs. Gary Fleischer, Ki

5   Hwang, Roberta Berg, Melanie Henry, Ann Poncelet, Thoha Pham, Mary Riley, Marcia Luisi,

6   Carl Fieser, Gary Coomber, Daniel Santiago, and Daniel Mandelbaum), two state agency medical

7   consultants (Drs. Mateus and Pong), and a third-party function report. *Id.* at 139-42.

8       Dr. Fleischer, an orthopedic surgeon, examined Plaintiff in October 2005. *Id.* at 138.

9   Plaintiff complained of left shoulder pain and a deep aching lower back pain. *Id.* The exam found

10  that Plaintiff had exquisite tenderness over his left distal clavicle, symptoms of lumbar radiculitis

11  but no demonstrable anatomic pathology, and some foraminal stenosis in the cervical spine. *Id.* at

12  138-39. A lumbar MRI from that time showed he had minimal disc desiccation. *Id.* at 138.

13      In January 2006, Plaintiff complained that he tried to go shopping, but after standing for a

14  few hours, he felt like his legs were "going to give out." *Id.* at 139. Dr. Hwang examined Plaintiff

15  in February 2006 and his findings were "much the same" as Dr. Fleischer's. *Id.*

16      In July 2006, Plaintiff reported back pain after stepping into a hole, and in October 2006 he

17  suffered a right shoulder sprain after he was involved in a motor vehicle accident. *Id.* Plaintiff

18  started to paint a room in November 2006, but had to stop because of shoulder pain. *Id.*

19      Dr. Berg examined Plaintiff in August 2007 in order to offer an opinion in connection with

20  a state welfare program. *Id.* at 139. She found that Plaintiff had severe pain and limitations in his

21  range of motion in his right shoulder, bilateral carpal tunnel syndrome, and spasms in right foot

22  and back. *Id.* Around the same time, Plaintiff had an x-ray and MRI taken of his right shoulder,

23  which showed AC joint arthrosis and a possible bursal surface partial thickness tear. *Id.* at 138.

24  Dr. Berg opined that Plaintiff could engage in less than sedentary activity, walk and stand for 30

25  minutes at most, sit for thirty minutes at most, never lift ten pounds, and never climb, balance,

26  stoop, kneel, crouch, crawl, or reach. *Id.* at 139. The ALJ accorded "little weight" to Dr. Berg's

27  opinion because she found that there was "minimal clinical evidence much less diagnostic

28  evidence" to substantiate this "extreme assessment." *Id.* The ALJ also noted that there was no

7

assessment regarding Plaintiff's left shoulder, and no explanation why Plaintiff could only sit, stand, or walk for only 30 minutes at a time. *Id.* The ALJ also found it remarkable that Dr. Berg had initially indicated that Plaintiff had "no restrictions" but changed this conclusion without explanation. *Id.*

Dr. Henry examined Plaintiff in October 2007. She found that Plaintiff had full strength in his upper extremities, with normal muscle tone and bulk, a normal cervical spine range of motion with mild pain when extending or doing lateral rotations, full range of motion of the lumbar spine on flexion and extension with most pain produced when extending, and some tenderness of the right shoulder. *Id.* She noted his history of chronic neck pain, right shoulder pain, low back pain, and occasional cervical radicular symptoms. Lumbosacral spine imaging taken around the same time showed that Plaintiff's disc desiccation had slightly worsened since his last imaging study. *Id.* at 138. Thoracic spine imaging showed mild deterioration since January 2006, as well as a minimal but stable curvature of the thoracic spine. *Id.*

After Plaintiff moved some furniture and boxes in December 2007, he suffered back pain and right shoulder pain. *Id.* at 139. Dr. Poncelet examined Plaintiff in January 2008. *Id.* Around that time, Plaintiff had right shoulder surgery for stage II subacromial impingement. *Id.* Nerve conduction and EMG studies showed no cervical radiculopathy, median neuropathy, right brachial plexopathy, or ulnar neuropathy. *Id.* An MRI of Plaintiff's cervical spine showed mild disc protrusion, creating mild to moderate thoracic spinal canal stenosis. *Id.* at 138.

After Plaintiff went camping in May 2008, he experienced an increase in pain. Dr. Pham then examined Plaintiff in June 2008, finding that he had chronic axial neck pain with cervical spine stenosis. *Id.* at 139-40. She administered a cervical epidural steroid injection, resulting in "much improvement." *Id.* at 140.

Dr. Riley saw Plaintiff three months later, in August 2008, in order to offer her opinion in connection with a state welfare program. *Id.* She also found that Plaintiff had limitations in the use of his right upper extremity, flares of lower back pain, and occasionally limited mobility of his lower extremities. *Id.* As a result, she opined that he could engage in less than sedentary activity, could stand, walk, or sit for less than two hours at a time, but could never stoop, and that he could

United States District Court
Northern District of California

8

occasionally lift 25 pounds.  *Id.*

In June 2009, Plaintiff had right shoulder imaging performed.  *Id.* at 138.  It suggested that Plaintiff had mild right AC joint osteoarthritis (joint arthrosis).  *Id.*  Dr. Riley saw Plaintiff again in September 2009, also in order to offer her opinion in connection with a state welfare program. *Id.* at 140.  This time, she found that Plaintiff could stand, walk, or sit for less than four hours at a time.  *Id.*  The ALJ found that both of Dr. Riley's opinions should be accorded "little weight" because they are "inconsistent with and unsupported by the objective medical evidence."  *Id.*  But the ALJ also noted that "certain aspects of Dr. Riley's opinion are in fact consistent with the [RFC] determined in this decision."  *Id.*  Plaintiff then underwent right shoulder surgery again in November 2009.  *Id.*  By February 2010, Plaintiff reported that his shoulder pain had improved, but his back had been "very bad" since he had to dig his girlfriend's car out of a ditch.  *Id.*

In April 2010, Dr. Fieser examined Plaintiff on behalf of the SSA.  *Id.*  He observed that Plaintiff could move without an assistive device with a normal gait pattern, was able to put on his shoes and take them off without assistance, and was able to get on and off the examination table without assistance.  *Id.*  He diagnosed Plaintiff with chronic neck pain of a myofascial origin, but found that he had full range of motion and no objective cervical radiculopathy.  *Id.*  He also found that Plaintiff had a history of lower back pain of myofascial origin, with spasms, but that he had full range of motion and no objective evidence of lumbar radiculopathy.  *Id.*  Dr. Fieser opined that Plaintiff did not have any exertional or non-exertional limitations whatsoever.  *Id.*  The ALJ gave Dr. Fieser's opinion "some but limited weight since he did not give reasonable consideration to [Plaintiff's] long-term, self-reported complaints of pain."  *Id.*  Also in April 2010, Dr. Mateus, a state agency medical consultant concluded that Plaintiff's impairments were "not severe."  *Id.*  The ALJ noted that Dr. Mateus's opinion, like Dr. Fieser's opinion, was given "reduced weight."  *Id.*

Dr. Luisi examined Plaintiff in September 2010.  *Id.*  She reported that Plaintiff had ulnar neuropathy in the right elbow that was consistent with mild right cubital tunnel syndrome, but that there was no evidence of right carpal tunnel syndrome or cervical radiculopathy.  *Id.*  Even after he attended physical therapy through October 2010, Plaintiff continued to complain about lower back pain and shoulder pain when engaged in overhead activity and throwing.  *Id.*

United States District Court
Northern District of California

1

2   In September 2010, Dr. Coomber examined Plaintiff in order to offer his opinion in

3   connection with a state welfare program. *Id.* at 141. He opined that Plaintiff could engage in less

4   than sedentary activity, but noted that Plaintiff used a walker and a cane to move around, had to

5   take breaks from sitting, and using a screwdriver in either hand elicited cramping in his thumbs.

6   *Id.* He also noted that Plaintiff could lift and carry 15 pounds occasionally and 10 pounds

7   constantly and could occasionally reach in every direction except above his shoulders. *Id.* The

8   ALJ found that "[l]ittle weight" should be given to Dr. Coomber's opinion because, at the time,

9   electrophysiological testing was still pending. *Id.* But the ALJ did note that "certain aspects of

10  the doctor's opinion are in fact consistent with the [RFC] determined in this decision." *Id.*

11      In October 2010, Dr. Pong, another state agency medical consultant, examined Plaintiff.

12  *Id.* He determined that Plaintiff could engage in "exertionally light activity." *Id.* The ALJ found

13  that Dr. Pong's opinion should be given "great weight" because it is "consistent with the overall

14  evidence," but noted that Plaintiff had "non-exertional limitations" that were unaddressed. *Id.*

15      In December 2010, Dr. Santiago examined Plaintiff. *Id.* He found that Plaintiff could

16  engage in less than sedentary activity due to chronic lower back pain and left leg radiculopathy,

17  but he did not assess any limitations with respect to reaching, handling, or fingering. *Id.* The ALJ

18  gave Dr. Santiago's opinion "limited weight" because it was "not supported by the objective

19  medical record" and "relied quite heavily" on Plaintiff's subjective report of symptoms. *Id.*

20      With respect to Plaintiff's non-severe mental impairments, Plaintiff's girlfriend reported in

21  October and November 2007 that Plaintiff was hearing voices, paranoid and delusional, and his

22  medication was making his condition worse. *Id.* But Plaintiff denied that he was hearing voices

23  or that he was depressed. *Id.* Dr. Mandelbaum, a board-certified psychiatrist, consultatively

24  examined Plaintiff on behalf of the SSA in March 2010. *Id.* He could not rule out that Plaintiff

25  was hearing voices and also suggested that Plaintiff's medication may be causing hallucinations.

26  *Id.* But he found that there was no evidence of "thought blocking" or that his hallucinations were

27  bothering him. *Id.* He opined that that was "no evidence of significant psychopathology that

28  would influence his ability to work." *Id.* The ALJ gave "[g]reat weight" to Dr. Mandelbaum's

    opinion because it is "consistent with and supported by the record as a whole." *Id.* at 142.

1        In sum, the ALJ afforded "little weight" to the opinions of Drs. Berg, Riley, and Coomber,

2    who each found that Plaintiff had generally severe physical limitations, *id.* at 139-41, "limited

3    weight" to the opinions of Drs. Fieser, Mateus, and Santiago, *id.* at 140-41, and "great weight" to

4    the opinions of Drs. Pong and Mandelbaum, *id.* at 140-42.  The ALJ also found that Plaintiff's

5    testimony about the intensity, persistence, and limiting effects of his symptoms were "not credible

6    to the extent they are inconsistent with the above [RFC] assessment."  *Id.* at 142.

7        Taking these findings together, the ALJ concluded that Plaintiff's "medically determinable

8    impairments could reasonably be expected to cause the alleged symptoms."  *Id.*  But she found

9    that "[g]reater restrictions are not supported given the lack of objective findings considering the

10   results of multiple imaging and electrodiagnostic tests."  *Id.*  She further noted that Plaintiff was

11   "apparently able to care for young children at home," had gone camping, and had tried to get a car

12   out of a ditch.  *Id.*  As a result, the ALJ found that Plaintiff's daily activities are "somewhat greater

13   than the claimant has generally reported."  *Id.*  Finally, the ALJ noted that because Plaintiff had

14   "worked only sporadically prior to the alleged disability onset date," it raised a question whether

15   Plaintiff's unemployment was medically related.  *Id.*

16       At Step Four, the ALJ found Plaintiff was unable to perform his past relevant work as a

17   painter.  *Id.*  That work is semi-skilled, extertionally medium work, and Plaintiff's RFC limits him

18   to exertionally light activities.  *Id.*

19       At Step Five, the ALJ determined that there were jobs that exist in significant numbers in

20   the national economy that Plaintiff could still perform, given Plaintiff's RFC, education, age, and

21   work experience.  *Id.* at 143.  In making this determination, the ALJ relied on the opinion of a VE,

22   who testified that an individual with Plaintiff's limitations could perform the job of a table worker

23   or assembler.  *Id.*  The VE also testified that approximately 549,000 table worker and 850,000

24   assembler jobs existed nationally, and this number would be eroded by about a quarter and fifteen

25   per cent, respectively, to account for Plaintiff's sit and stand requirement.  *Id.*  Holding that

26   Plaintiff was "capable of making a successful adjustment to other work that exists in significant

27   numbers in the national economy," the ALJ concluded that the Plaintiff was not disabled.  *Id.*

28       //

United States District Court
Northern District of California

11

United States District Court
Northern District of California

1

          2.      <u>First Administrative Appeal</u>

        Following that decision, on March 21, 2012, Plaintiff filed an appeal with the SSA Appeals

Council ("AC").  *Id.* at 225.  Plaintiff obtained a non-attorney representative to assist him with the

appeals process.  *Id.* at 220.  On May 7, 2013, the AC granted Plaintiff's request for review.  *Id.* at

152.  The AC found that Plaintiff did not have an opportunity to review evidence entered into the

record on January 25, 2012, the day after the hearing.  *Id.*  Because there was no indication that

Plaintiff had waived his rights to examine the evidence or appear at a supplemental hearing, the

AC vacated the ALJ's decision and remanded the case for further proceedings.  *Id.*

          3.      <u>Second ALJ Hearing and Decision</u>

        On October 15, 2013, the ALJ held a new hearing on Plaintiff's SSI application.  *Id.* at 72.

Plaintiff and a VE both testified.  *Id.*  On February 12, 2014, the ALJ issued a written decision that

again found Plaintiff not disabled and denied his SSI application.  *Id.* at 20.

        After again finding that Plaintiff was not presently engaged in substantial gainful activity

at Step One, the ALJ determined that Plaintiff had two severe impairments at Step Two: (1) right

shoulder impingement syndrome with AC joint arthrosis; and (2) degenerative disc disease of the

lumbar spine.  *Id.* at 26.  In the original decision, the ALJ found that Plaintiff also suffered from

the severe impairments of mild right cubital tunnel syndrome, obesity, and lower back pain of

myofascial etiology.  *Id.* at 135.  But in the second decision, the ALJ found that Plaintiff's mild

cubital tunnel syndrome did not cause more than a "minimal limitation."  *Id.* at 26.  The ALJ

based this changed finding on the same January 2008 EMG study that she considered in her first

decision, and omitted Dr. Luisi's EMG study of Plaintiff in September 2010, which showed mild

right cubital tunnel syndrome.  *Id.* at 139-40.  The ALJ did not explain why Plaintiff's obesity and

lower back pain of myofascial etiology were no longer severe impairments.  Additionally, the ALJ

again found that Plaintiff's mental impairments were non-severe.  *Id.* at 26.

        At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of

impairments equivalent to a listed impairment for the same reasons as in the first decision.  *Id.* at

26-27.

        The ALJ then found that Plaintiff had the RFC "to perform light work as defined in 20

C.F.R. § 416.967(b) except that [Plaintiff] requires the option to sit or stand every 30-40 minutes with [the] opportunity to switch positions." *Id.* at 27. She also found that Plaintiff could "perform occasional postural activities but can never climb ladders, ropes, or scaffolding; can never work at heights or with heavy hazardous machinery as a safety precaution; and can perform no overhead reaching." *Id.* In short, Plaintiff is "limited to simple, repetitive, unskilled tasks with a maximum Specific Vocational Preparation (SVP) of '2.'" *Id.* In determining Plaintiff's new RFC, the ALJ incorporated by reference her discussion of all of the evidence in her first decision. *Id.* at 27. The ALJ also noted that additional evidence considered included a nurse practitioner's opinion from September 2010, Dr. Coomber's treatment records from 2013, and Plaintiff's new testimony. *Id.* at 28-29, 31.

Leona Judson, a nurse practitioner, wrote in a brief letter in September 2010 that Plaintiff was "disabled" and was advised to receive home delivered meals. *Id.* at 31. The ALJ gave "limited weight" to this opinion because it was offered without basis. *Id.*

Dr. Coomber examined Plaintiff in July 2013. *Id.* He found that bilateral median nerve problems limited Plaintiff's ability to grasp, turn, twist, and finely manipulate items with his hands. *Id.* As a result, Dr. Coomber opined that Plaintiff could only hold a screwdriver and twist and turn a doorknob and could not lift objects over 5 pounds overhead. *Id.* The ALJ accorded "limited weight" to Dr. Coomber's opinion because "[t]he restrictions are not supported by the treatment notes or the diagnostic testing results and the weight limitations are not explained other than adopting [Plaintiff's] subjective complaints." *Id.*

Plaintiff testified that he was "doing about the same" as he was at the last hearing. *Id.* at 28. He noted that he was on several medications, including Risperdal, Ambien, Baclofen, Norco, and morphine. *Id.* He also explained that he could drive to doctors' appointments, the store, and the school that his children attend, but that he could only sit for 20 minutes at a time and only lift five pounds. *Id.* The ALJ noted that Plaintiff's testimony was "very vague" and that he "appeared to have difficulty answering basic questions." *Id.* She also found that while Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, his statements about the "intensity, persistence and limiting effects of these symptoms [were] not

United States District Court
Northern District of California

1    entirely credible for the reasons explained in this decision." *Id.* Those reasons were that objective

2    studies did not support his claims, he took care of his children at home, he went camping, and he

3    tried to dig a car out of a ditch. *See id.*

4         In sum, the ALJ accorded the same weight to each of the opinions that she did in the first

5    hearing. *Id.* at 27-32. With respect to Drs. Luisi and Santiago, who each diagnosed Plaintiff with

6    mild right cubital tunnel syndrome, which was supported by a 2010 EMG study, the ALJ newly

7    noted that their opinions were "directly inconsistent with findings." *Id.* at 29.

8         At Step Four, the ALJ found that Plaintiff was unable to perform his past relevant work as

9    a house painter. *Id.* at 32.

10        At Step Five, the ALJ found that Plaintiff could perform jobs that exist in significant

11   numbers in the national economy given his age, education, work experience, and RFC. *Id.* A VE

12   testified that Plaintiff would be able to perform the requirements of jobs such as silver wrapper,

13   Mexican food maker, office helper, and addresser. *Id.* at 33, 106-08. The ALJ accepted the VE's

14   testimony and held that these jobs existed in significant numbers in the national economy. *Id.* at

15   33. Accordingly, the ALJ concluded that Plaintiff was not disabled. *Id.*

16              4.    Second Administrative Appeal

17        Plaintiff appealed again, but the AC denied Plaintiff's request for further review. *Id.* at 5.

18   With the request for review, Plaintiff had submitted a new medical source statement from Dr.

19   Gary Coomber dated May 4, 2014. *Id.* at 8. While the AC denied Plaintiff's request for review of

20   the ALJ's decision, the AC made the new medical source statement part of the record. *Id.* at 1, 9.

21              5.    Judicial Appeal

22        On February 24, 2015, Plaintiff appealed Defendant's final decision denying his SSI

23   disability benefits application to this Court. Dkt. No. 1. Plaintiff moved for summary judgment

24   on July 14, 2015, and Defendant filed its cross-motion on October 26, 2015.

25        Plaintiff contends that the ALJ erred for three reasons. First, Plaintiff argues that the ALJ

26   improperly determined his RFC by selectively weighing evidence, failing to acknowledge severe

27   limitations, and discounting Plaintiff's statements about his symptoms and limitations. Pl.'s MSJ

28   at 9-11. Specifically, Plaintiff alleges that the ALJ heavily discounted five different medical

opinions offered by Drs. Coomber and Santiago, two of Plaintiff's treating physicians, without giving specific, legitimate reasons supported by the record as to why. *Id.* at 11 (citing *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)).  Separately, Plaintiff contends that the ALJ improperly failed to note Dr. Coomber's opinion (among other evidence) that Plaintiff suffered from "bilateral median nerve entrapment," which created an independent limitation in Plaintiff's arms and hands, as well as his degenerative disc disease of the cervical spine. *Id.* at 14-15 (citing *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001)).  The ALJ found both of those conditions to be severe impairments in her first opinion, but did not mention those conditions in the second decision.  Plaintiff also argues that the ALJ failed to consider the side effects of his medications, several of which are narcotics and psychoactive, especially in light of his confused and vague testimony. *Id.* at 14 (citing *Regennitter v. Commissioner*, 166 F.3d 1294, 1296 (9th Cir. 1999)).  Second, Plaintiff contends that the ALJ failed to consider his obesity at Step Three. *Id.* at 20.  And third, Plaintiff argues that Defendant did not carry her burden of proof at Step Five because the VE's testimony was based on a hypothetical that did not include all of Plaintiff's limitations. *Id.* at 20-23.

Defendant responds in her cross-motion that the ALJ properly determined Plaintiff's RFC, considered Plaintiff's obesity at Step Three, and met her burden at Step Five.  First, with respect to Plaintiff's RFC determination, Defendant contends that the medical opinions of Drs. Coomber and Santiago were properly discounted because they were contradicted by other medical opinions, including Dr. Fieser's and Dr. Pong's, as well as objective imaging evidence.  Def.'s MSJ at 3-12. Defendant also contends that Plaintiff has failed to show why the ALJ's failure to consider his cervical degenerative disc disease and cubital tunnel syndrome were material omissions. *Id.* at 12. Defendant further argues that the ALJ properly discounted Plaintiff's testimony for the same reasons that she discounted Dr. Coomber and Dr. Santiago's testimony.  Namely, those claims were not supported by objective imaging evidence and were contradicted by other medical testimony. *Id.* at 13-14.  Second, with respect to the ALJ's consideration of Plaintiff's obesity at Step Three, Defendant contends that Plaintiff fails to provide any evidence that his obesity created a limitation that met or equaled a specific limitation set forth in the SSA. *Id.* at 17-18.  Finally,

United States District Court
Northern District of California

15

1   with respect to the ALJ's determination that Plaintiff was not disabled at Step Five, Defendant

2   argues that the hypothetical question was clear, noting that Plaintiff's representative did not object.

3   *Id.* at 18-19.

4   **II.     STANDARD OF REVIEW**

5          An ALJ's decision must be affirmed if she applied the correct legal standards and there is

6   substantial evidence supporting her findings.  *Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001);

7   *see also* 42 U.S.C. § 405(g) ("[F]indings of the Commissioner of Social Security as to any fact, if

8   supported by substantial evidence, shall be conclusive.").  "Substantial evidence is such relevant

9   evidence as a reasonable mind might accept as adequate to support a conclusion."  *Webb v.

10  Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th

11  Cir. 2002) ("substantial" means "more than a scintilla but less than a preponderance").  Further, it

12  is the ALJ who is responsible for determining credibility and resolving conflicts and ambiguity in

13  the evidence, not reviewing courts.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

14         Courts must consider the administrative record as a whole, weighing the evidence that

15  supports as well as detracts from the ALJ's conclusion, *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th

16  Cir. 1999), but courts also "cannot affirm the decision of an agency on a ground that the agency

17  did not invoke in making its decision," *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001).  For

18  that reason, an ALJ's finding must be "supported by specific, cogent reasons."  *Reddick*, 157 F.3d

19  at 722.  But even if an error is found, a court may not reverse an ALJ's decision if the error is

20  harmless.  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

21  **III.    DISCUSSION**

22         The Court now addresses Plaintiff's challenges to the ALJ's finding of non-disability in the

23  order that the ALJ procedurally addressed them in her final decision.  The Court concludes that the

24  ALJ did not err in her analysis.

25         **A.     Step Three—Obesity**

26         Plaintiff contends that the ALJ failed to consider his obesity at Step Three when finding

27  that his impairments, or combination of impairments, did not meet or equal a listed impairment.

28  20 C.F.R. § 416.920(a)(4)(iii), (d); *see also Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

United States District Court
Northern District of California

1    At Step Three in her second decision, the ALJ stated with respect to Plaintiff's obesity:

2        "[Plaintiff's] obesity is noted in the record with a Body Mass Index (BMI) of 33
         in 2008 and 31 in 2012.  Obesity is not a listed impairment.  The undersigned has
3        considered the combined effects of [Plaintiff's] obesity when evaluating his
         disability in accordance with Social Security Ruling 02-lp by assessing the effect
4        obesity has upon [Plaintiff's] ability to perform routine movement and necessary
         physical activity within the work environment."
5

6    *Id.* at 26.  Accordingly, the ALJ at least nominally considered Plaintiff's obesity at Step Three.

7        Plaintiff is correct, however, that the ALJ found his obesity was a severe impairment in her

8    first decision (as well as his degenerative disc disease and cubital tunnel syndrome), but then did

9    not mention obesity at all at Step Two in her second decision, without explanation.  *Compare* AT

10   at 135 *with id.* at 26.  Even if that omission amounted to error as it pertains to Steps Two and

11   Three, Plaintiff fails to specify which listing he believes he would have met or equaled if his

12   obesity (and his other omitted severe impairments) were considered severe at Step Three.  Plaintiff

13   does not set forth any evidence that would support the diagnosis and findings of a listed

14   impairment.  For that reason, any error at Step Two and Three in not considering obesity as a

15   severe impairment is not reversible.  *See Burch*, 400 F.3d at 676 (holding that the ALJ's error in

16   not considering obesity at Step Three was not reversible because the plaintiff did not say what

17   listed impairment he met or equaled); *see also Tackett*, 180 F.3d at 1099 ("[A] claimant must

18   establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the

19   characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to

20   the listed impairment 'most like' the claimant's impairment.") (quoting 20 C.F.R. § 404.1526);

21   S.S.R. 02-1p, 67 Fed. Reg. 57,859–02 (Sept. 12, 2002) ("[An ALJ] will not make assumptions

22   about the severity or functional effects of obesity combined with other impairments.").

23       Plaintiff's citation to *Celaya v. Halter*, 332 F.3d 1177, 1181-83 (9th Cir. 2003), does not

24   change this analysis.  In that case, the Ninth Circuit held that although the plaintiff did not present

25   evidence that her obesity helped to establish equivalence to a listed impairment at Step Three, the

26   ALJ was required to consider obesity in her multiple impairment analysis because the plaintiff was

27   pro se and the evidence was implicit in the plaintiff's recorded severe impairments of hypertension

28   and diabetes.  *Id.*  This case is distinguishable.  The ALJ did consider Plaintiff's obesity, at least

United States District Court
Northern District of California

17

1    nominally, there is no evidence in the record indicating that Plaintiff's obesity exacerbated any

2    other of his impairments, and he was represented at his second hearing, albeit by a non-attorney.

3           Accordingly, the Court finds no reversible error at Step Three because Plaintiff did not

4    provide any evidence sufficient to conclude that he meets or equals a listed impairment.

5    **B.      RFC Determination**

6           Plaintiff next contends that the ALJ erred in determining his RFC because she selectively

7    weighed evidence, failed to acknowledge severe limitations, and discounted Plaintiff's statements

8    about his symptoms and limitations.  Pl.'s MSJ at 9-15.  The Court addresses each issue in turn.

9           First, Plaintiff argues that the ALJ improperly discounted medical opinions offered by Drs.

10   Coomber and Santiago, two of Plaintiff's treating physicians, without giving specific, legitimate

11   reasons supported by the record as to why.  Courts "distinguish among the opinions of three types

12   of physicians [in disability insurance cases]: (1) those who treat the claimant (treating physicians);

13   (2) those who examine but do not treat the claimant (examining physicians); and (3) those who

14   neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821,

15   830 (9th Cir. 1995).  These "physicians may render medical, clinical opinions, or they may render

16   opinions on the ultimate issue of disability—the claimant's ability to perform work." *Reddick*,

17   157 F.3d at 725.  Generally, the medical opinions of treating physicians should be given more

18   weight than those of other physicians.  20 C.F.R. § 416.927(c)(2); *Garrison v. Colvin*, 759 F.3d

19   995, 1012 (9th Cir. 2014).  But a finding that a treating physician's opinion "is not well-supported

20   by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the

21   other substantial evidence" of the medical record entitles an ALJ to find that the opinion is not

22   entitled to controlling weight.  61 Fed. Reg. 34,490, 34,491 (Jul. 2, 1996).  If a treating physician's

23   opinion is not given controlling weight, the ALJ then considers the length, nature, and extent of

24   the treatment relationship and the supportability and consistency of the opinion with the record as

25   a whole to determine its proper weight.  20 C.F.R. § 404.1527(c).  An ALJ "is not bound by the

26   uncontroverted opinions of the claimant's physicians on the ultimate issue of disability, but he

27   cannot reject them without presenting clear and convincing reasons for doing so." *Reddick*, 157

28   F.3d at 725.  However, "[i]f a treating or examining doctor's opinion is contradicted by another

United States District Court
Northern District of California

1   doctor's opinion, an ALJ may [] reject it by providing specific and legitimate reasons that are

2   supported by substantial evidence." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012)

3   (citation omitted).  "The ALJ could meet this burden 'by setting out a detailed and thorough

4   summary of the facts and conflicting clinical evidence, stating [his or her] interpretation thereof,

5   and making findings.'"  *Magallanes*, 881 F.2d at 753.  "To the extent that other physicians'

6   conflicting opinions rested on independent, objective findings, those opinions could constitute

7   substantial evidence."  *Id.*

8         The Court first considers whether the ALJ improperly discounted Dr. Coomber's opinions,

9   and finds that she did not.  Dr. Coomber offered three opinions: (1) a September 2010 medical

10   opinion that Plaintiff could not work because of his impairments; (2) a July 2013 clinical opinion

11   that Plaintiff had median nerve entrapment in both arms; and (3) a May 2014 disability opinion

12   that Plaintiff had bilateral median nerve problems that limited his ability to grasp, turn, twist, and

13   finely manipulate items with his hands, such that Plaintiff could hold a screwdriver and twist and

14   turn a doorknob, but could not lift objects over 5 pounds overhead.  AT at 683-85, 1196-1202,

15   1205-06.

16         The ALJ did not address Dr. Coomber's September 2010 opinion in her second decision,

17   except to incorporate her entire discussion from the first decision by reference.  Looking to the

18   first decision, the ALJ discussed the opinions of several doctors, including Drs. Fieser, Pong, and

19   Coomber.  The ALJ gave "some but limited weight" to Dr. Fieser's April 2010 opinion that

20   Plaintiff had no physical limitations whatsoever, and "great weight" to Dr. Pong's October 2010

21   opinion that Plaintiff could engage only in "exertionally light activity," because it was consistent

22   with the overall evidence, including the negative EMG results from 2008.  *Id.* at 140.  Because

23   these opinions directly contradicted Dr. Coomber's opinion that Plaintiff could only "engage in

24   less than sedentary activity," the ALJ was entitled to discount Dr. Coomber's opinion for specific

25   and legitimate reasons.  *See Chaudhry*, 688 F.3d at 671.  The Court finds that the ALJ satisfied

26   that standard when she detailed Dr. Coomber's medical findings and accorded his opinion "little

27   weight" because she found it "conclusory and not supported by the objective medical record."  *Id.*

28   at 141.  Specifically, the ALJ noted that Dr. Coomber "indicated that the claimant was 'pending

United States District Court
Northern District of California

electrophysiologic testing'" at the time he formed his opinion, *see id.* at 139, despite Plaintiff's 2008 EMG results that indicated "[t]here [was] no electrophysiological evidence for a cervical radiculopathy, median neuropathy, right brachial plexopathy or ulnar neuropathy." *Id.* at 29. The ALJ therefore did not err in discounting Dr. Coomber's September 2010 opinion.

In 2013, Dr. Coomber opined that Plaintiff's bilateral grasping, turning, and twisting and fine manipulation was limited to 5% and Plaintiff's reaching was limited to 75% bilaterally. *Id.* at 31. Given the contradictory opinions of Drs. Fieser and Pong in the medical record, the ALJ was again entitled to discount Dr. Coomber's opinion for specific and legitimate reasons in her second decision. There, the ALJ found that Dr. Coomber's 2013 opinion should be accorded "limited weight" because "[t]he restrictions [were] not supported by the treatment notes or the diagnostic testing results and the weight limitations [were] not explained other than adopting [Plaintiff's] subjective complaints. . . ." *Id.* at 31 (noting, for example, that Dr. Coomber's finding that Plaintiff could barely hold a screwdriver or twist a doorknob directly reflected Plaintiff's statement "that holding a screwdriver to tighten a doorknob was difficult for him"). The ALJ's reasons for discounting Dr. Coomber's opinion in her second decision were thus also specific and legitimate. Finally, with respect to Dr. Coomber's May 2014 opinion, the ALJ rendered no opinion because this evidence was incorporated into the record by the AC during the second administrative appeal. *Id.* at 1, 8-9. "[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the [ALJ's] final decision for substantial evidence." *Brewes v. Comm'r of SSA*, 682 F.3d 1157, 1163 (9th Cir. 2012). In his May 2014 opinion, Dr. Coomber opined that Plaintiff had bilateral median nerve problems, chronic back pain, arthralgia, psychotic disorder, bilateral mild thenar atrophy, lumbar paraspinal tenderness, and drowsiness and impairment as side effects of his medications. *Id.* at 1203-04. He also indicated that Plaintiff has an abnormal gait and uses a walker, which would limit his mobility in a work environment. *Id.* at 1204. While this additional information bolstered Dr. Coomber's earlier opinions, the ALJ was nevertheless entitled to discount those opinions because they were contradicted by other professional opinions, and the ALJ provided specific and cogent reasons for

United States District Court
Northern District of California

20

1   doing so.  The Court finds that the ALJ did not err in her analysis with regard to Dr. Coomber.

2          The Court also finds that substantial evidence supports the ALJ's determination that Dr.

3   Santiago's medical opinions merited little weight.  Dr. Santiago's medical source statement from

4   December 2010 alleges that Plaintiff "needed to be able to lie down and needed to have his legs

5   elevated twenty to thirty-five percent of the workday . . .  [and] had significant limitations with

6   grasping, fine manipulation, and reaching."  *Id.* at 30.  The ALJ gave limited weight Dr.

7   Santiago's December 2010 opinion because he "apparently relied quite heavily on the subjective

8   report of symptoms and limitations" provided by Plaintiff.  *Id.* at 141.  Upon review of the medical

9   records, the Court finds that this conclusion was not error.

10          Second, Plaintiff contends that the ALJ improperly discounted his subjective testimony

11   about the severity of his symptoms.  The Ninth Circuit provides the following framework for

12   determining whether a plaintiff's testimony about pain and symptoms is credible:

13          First, the ALJ must determine whether the claimant has presented
14          objective medical evidence of an underlying impairment which could
             reasonably be expected to produce the pain or other symptoms alleged.  In
15          this analysis, the claimant is not required to show that her impairment
             could reasonably be expected to cause the severity of the symptom she has
16          alleged; she need only show that it could reasonably have caused some
             degree of the symptom.  Nor must a claimant produce objective medical
17          evidence of the pain or fatigue itself, or the severity thereof.

18          If the claimant satisfies the first step of this analysis, and there is no
             evidence of malingering, the ALJ can reject the claimant's testimony
19          about the severity of her symptoms only by offering specific, clear and
             convincing reasons for doing so."  This is not an easy requirement to meet:
20          The clear and convincing standard is the most demanding required in
             Social Security cases.
21

22   *Garrison*, 759 F.3d at 1014-15 (quotation marks and internal citations omitted).

23          Applying this framework, the Court finds that the ALJ properly discounted Plaintiff's

24   testimony about the extent, persistence, and limiting effects of his symptoms.  In the first step, the

25   ALJ determined that the claimant produced objective medical evidence of impairments that could

26   reasonably be expected to cause the alleged symptoms.  AT at 28.  In the second step, although the

27   ALJ did not point to any evidence of malingering, she did not find Plaintiff's statements "entirely

28   credible" because Plaintiff was "able to care for [his] young children at home" "without any

United States District Court
Northern District of California

21

particular assistance," and noted that the "the record reflect[ed] work activity and activities, such as camping and getting a car out of ditch [sic]." *Id*. Additionally, the ALJ noted that Plaintiff drove two to three times per week to the doctor's office, to the store, and to pick his children up from school, and that he attended some of his children's sports games. *Id.* at 85-86. The ALJ found that this evidence indicated that Plaintiff's "daily activities ha[d] been, at least at times, somewhat greater than [Plaintiff] ha[d] generally reported." *Id.* at 28. The Court agrees, and finds the ALJ's reasoning specific, clear, and convincing.

Third, the ALJ must consider evidence regarding the side effects of a claimant's medication when evaluating a claimant's limitations. *Davidson v. Astrue*, 703 F.2d 1008, 1014 (9th Cir. 2008). In *Davidson*, the court determined that the ALJ improperly failed to consider claimant's side effects. *Id*. The ALJ "briefly acknowledge[d]" the claimant's testimony and records concerning medication side effects, including claimant's difficulty sleeping and racing thoughts, but neither properly discredits these side effects nor references them in his hypothetical to the vocational expert. *Id*.

Here, Plaintiff contends that the primary side effects of his medications and impairments are daytime tiredness and sleepiness. Pl.'s Mot. at 14. The Court finds that the ALJ properly considered these side effects in her determination. In her hypothetical posed to the vocational expert, the ALJ noted that Plaintiff "for safety reasons since he's on narcotic medication should avoid working at unprotected heights and heavy or hazardous machinery." AR at 106. The Court finds that the ALJ properly considered the side effects of claimant's medication as supported by the record.

Accordingly, the Court finds that the ALJ committed no reversible error in making her RFC Determination.

## C.     The ALJ Properly Acknowledged Medical Evidence

Plaintiff contends that the ALJ erred by improperly considering evidence of Plaintiff's degenerative disc disease of the cervical spine and right arm cubital tunnel syndrome. Pl.'s Mot. at 15. This Court finds that the ALJ properly considered evidence of Plaintiff's degenerative disc disease of the cervical spine and right arm cubital tunnel syndrome in the ALJ's 2014 decision.

1    The Appeals Council vacated the February 15, 2012 hearing decision upon Plaintiff's

2    appeal. AR at 152.  However, the Appeals Council did not vacate the ALJ's order in its entirety,

3    and so in the second hearing decision, the ALJ incorporated the discussion of the evidence except

4    as supplemented or amended in the February 12, 2014 decision.  *Id.* at 26-27.  Specifically, the

5    ALJ incorporated by reference the prior evaluation of Plaintiff's right shoulder impairment status-

6    post surgery, obesity, degenerative disc disease of the cervical spine, mild right cubital tunnel

7    syndrome, and low back pain of myofascial etiology. *See id.* at 135.  In the second hearing

8    decision, furthermore, the ALJ explicitly discussed these impairments, including a discussion of

9    the impact of Plaintiff's obesity.  *Id.* at 26.  This Court finds that the ALJ properly acknowledged

10   and assessed the medical evidence of record.

### D.    Substantial Evidence Supports the ALJ's Determination at Step Five

12   Once a claimant proves that he cannot perform his prior relevant work in Step Four, the

13   burden shifts to the Secretary to prove that the claimant can do other jobs that exist in significant

14   numbers.  *Magallanes*, 881 F.2d at 756 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.

15   1988)).  To meet this burden, the Secretary may use the testimony of a vocational expert ("VE").

16   *Id.*  Specifically, the VE may provide examples of realistic jobs that the claimant could do, in

17   response to hypothetical questions that include all of the claimant's limitations and restrictions. *Id.*

18   If a reviewing court finds that the hypothetical posed to the VE encompassed all

19   limitations on record, and that either the number of regionally available or nationally available

20   jobs reported by the VE are significant, then the court must uphold the ALJ's determination that

21   there exists substantial gainful activity in significant numbers. *Beltran v. Astrue*, 700 F.3d 386,

22   390 (9th Cir. 2012).  The Ninth Circuit has upheld an ALJ's determination that over 3,750 jobs

23   were a significant number. *Barker v. Secretary of Health & Human Services*, 882 F.2d. 1474, 1478

24   (9th Cir. 1989).

25   Plaintiff advances two arguments to challenge the ALJ's determination at Step Five. Pl.'s

26   Mot. at 20.  First, Plaintiff alleges that the VE's testimony lacked evidentiary value as the

27   testimony was based on the expert's personal experience. *Id.* at 23.  This argument must fail.  A

28   VE's recognized expertise is a sufficient foundation for her testimony. *Bayliss*, 427 F.3d at 1218.

United States District Court
Northern District of California

1    Second, Plaintiff alleges that the ALJ erred by failing to provide clear hypotheticals to the

2    VE that included all of Plaintiff's limitations.  Pl.'s Mot. at 22.  This argument also fails.  The

3    hypotheticals posed to the VE encompassed all limitations on record.  During the October 2013

4    hearing, the ALJ asked the VE to identify representative jobs that could be performed by a

5    claimant who "climbs ramps and stairs; balance, stoop, kneel, crouch, and crawl but [is] precluded

6    from climbing ladders, ropes, or scaffolding . . . [who] should not perform work that is over head .

7    . . . [who] should avoid working at unprotected heights and heavy or hazardous machinery . . .

8    [who] should be restricted to just simple, routine, and unskilled jobs." AR at 106.  In response to

9    this hypothetical, the VE identified 160,000 national housekeeping cleaner jobs; 252,000 national

10   Mexican food maker jobs; and 66,000 national silver wrapper jobs. *Id.* at 107.  The ALJ also

11   posed a hypothetical including the above limitations, and adding the limitation that Plaintiff would

12   require "an opportunity to sit or stand every 30 or 40 minutes to shift around." *Id.*  In response to

13   the second hypothetical, the VE identified 70,000 national office helper jobs, and 12,000 national

14   addresser jobs. *Id.* at 108.  Finally, the ALJ asked the VE for representative jobs available to a

15   claimant who has a sedentary RFC. *Id.*  The VE responded that many jobs would be eroded, but

16   the addresser job remained as a representative job. *Id.*

17       The Court finds that the ALJ provided clear hypotheticals to the VE that encompassed all

18   of Plaintiff's limitations of record.  The ALJ properly evaluated Plaintiff's subjective testimony

19   and the medical evidence of record, including the opinions of Plaintiff's various physicians, and

20   determined that Plaintiff had the residual functional capacity to perform light work as defined in

21   20 CFR 416.967(b) with certain limitations. *Id.* at 27.  The ALJ incorporated this RFC, including

22   the limitations, in the hypotheticals posed to the VE.  The VE identified a significant number of

23   nationally and regionally available representative jobs, and so the Court must uphold the ALJ's

24   determination that there exists substantial gainful activity in significant numbers. *Beltran*, 700

25   F.3d at 390.

26       Substantial evidence supports the ALJ's determination at Step Five that Plaintiff is not

27   disabled, as Defendant properly proved the existence of appropriate work that exists in significant

28   numbers in the national economy.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155,

United States District Court
Northern District of California

24

1166 (9th Cir. 2008).

**IV.   CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED.**
Plaintiff's Cross-Motion for Summary Judgment is **DENIED**.  Judgment shall be entered in favor
of Defendant.

**IT IS SO ORDERED.**

Dated: 11/22/2016

HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California